8354

## MIDLAND TIMBER ·CO. v. PEGUES.

TIMBER DEED.—Under the reservation in a timber contract "that I or we, the said vendor, shall have the right to use such timber from the aforesaid tract or tracts of land as may be necessary for ordinary plantation purposes connected with said land, this reservation, however, not to include the right to clear the said land or any of it," the grantor may use such timber as, is necessary to build tenant houses sufficient to house the tenants needed for the lands in cultivation, to bridge the streams where the plantation roads cross, and to keep in repair the fences.

Before DeVore, J., Berkeley, January, 1912.    Affirmed.

Action by Midland Timber Company against F. W. Pegues *et al.*

The Circuit decree is:

"This case was tried by me without a jury at November term of Court for the above county, 1911.   The action is in the usual form for an injunction, restraining the defendants from cutting, destroying and using the timber on the two tracts of land described in the complaint, and grows out of the following facts:

"On 1st September, 1902, Eliza C. Stoney conveyed the timber on what is known as 'Gippy' tract of land containing one thousand acres, situate in the above county (as will appear by her deed), to F. S. Farr.   On ·26th January, 1904, Farr conveyed to the Atlantic Coast Lumber Corporation; on 9th June, 1910, the Atlantic Coast Lumber Corporation conveyed to plaintiff; on the 9th January, 1911, Eliza C. Stoney sold and conveyed the fee simple title to the tract of land, 'Gippy,' and on which the timber is now standing and growing, to defendants.   On 5th October, 1903, Josephine M. Jenkins conveyed in fee the timber standing and fallen on 'Wantoot' tract of land containing eighteen hundred acres to S. F. Farr; on 24th October,

1903, Farr conveyed to Oneida Timber Company; on 30th June, 1910, Oneida Timber Company conveyed to the plaintiff; thereafter, on the 24th August, 1910, Josephine M. Jenkins conveyed, under her own deed, the fee in the timber to plaintiff in said 'Wantoot' tract. On 5th January, 1901, Josephine M. Jenkins conveyed the fee simple title to 'Wantoot' tract to the defendants. The three hundred and fifty dollars asked for in the complaint was eliminated in open Court at the trial, and is not involved now.

"All the above mentioned deeds were duly executed, delivered and recorded, hence no question involving their validity and no question involving want of notice by any one interested.

"The defendants admit, in their answer, they have cut timber from the two tracts of land involved in the suit, but undertake to justify their act in so doing by and under the terms of the deeds.

"The evidence is very voluminous, and a great deal of it was objected to as incompetent, all of which objections I sustain, except as to that evidence upon which I base my findings of facts.

"I find as matter of fact, at the time of the sale of the timber to Farr, by Mrs. E. C. Stoney, on the 'Gippy' tract as described in her deed, there were six hundred and thirty-nine acres of cleared and cultivable land on the place, all of which Farr and those claiming through him had notice.

"I find as matter of fact there are eight (8) tenant houses on 'Gippy' farm in very good repair, only three, however, available for tenants. I find as matter of fact, in accordance with the ordinary and usual manner land is worked and cultivated in Berkeley county, where this land is, about twenty-five acres constitutes a one-horse farm. I find as matter of fact, there are a number of small bridges across ditches and branches on 'Gippy' tract that are necessary for farming purposes. I find as matter of fact that there is considerable wire fence on said tract, all of which Farr and

those claiming through him had notice, before and at time of purchase of the timber. I find as matter of fact a two-room house, each room being fourteen feet square, would be the usual and ordinary tenant house used in the community where the land is, and that about thirty-five hundred feet of lumber would build such a house.

"I find as matter of fact that there are about nine hundred acres of cleared and cultivable land on 'Wantoot' plantation. I find as matter of fact there are thirty-one tenant houses on 'Wantoot' tract built there in last five or six years and in pretty good repair.

"With the above state of facts, which I consider the competent evidence sustains, and which I find to be true, I now come to the consideration of the law based thereon, together with my conception of what is the proper construction of the deeds involved here. As I understand, there is no contention as to what passed under the deeds to the plaintiff, but the question is, what rights were reserved by Mrs. Stoney and Mrs. Jenkins in their respective deeds, through and under whom plaintiffs claim?

"The reservation in the deed from Mrs. Jenkins to the plaintiff is, 'That I, or we, the said vendor, shall have the right to use such timber from the aforesaid tract or tracts of land as may be necessary for ordinary plantation purposes connected with said land, this reservation, however, not to include the right to clear the said land, or any of it.'

"The reservation contained in the deed from Mrs. Stoney to Farr is the same as in the Jenkins deed, except the words 'as may be necessary' do not appear therein. Both reservations are in substance the same. Many authorities have been cited pro and con, but not one directly in point, as to what construction should be put on the terms of the reservations contained in the deeds. The law which governs life tenant and remainderman was relied upon very strongly by plaintiff as furnishing the rule by which I am to be guided. With this position I cannot agree. For the reason

that the law itself fixes those rights, while here the parties themselves have undertaken to fix their rights, by contract.

"So the question here is, what is the reasonable fair and just interpretation and meaning, based on the rules of law, of the contract between the parties as contained in the two reservations?

"Certainly both parties regarded the clearing of land as an ordinary plantation purpose, for that is expressly prohibited in the reservation clause of the deeds. It would not have been necessary to insert this prohibition had it not been an ordinary plantation purpose to clear land. If this be correct, the grantors, and those claiming through them, have the right to use timber for every other ordinary plantation purpose connected with the land.

"Ordinary, in the usual acceptation of the word, means 'common,' 'usual,' 'common occurrence,' 'usual practice.' Plantation in a cultivated estate, 'a large farm for raising the different products of agriculture.' In order to raise such products it is necessary to hire labor, especially on large farms or plantations. Ordinarily, owner of farms or plantations must have tenant houses, to secure labor. Ordinarily, large farms or plantations are divided into smaller ones; that is to say, into one and two-horse farms. Ordinarily, the owner must furnish a house to those whom he employs to work their farms, whether they be tenants, croppers or wage laborers. These are ordinary plantation purposes, in accordance with the facts in this case, in the community where the land is situated, and at the time of the sale of the timber. I therefore conclude as matter of law, based on the facts as found, and the meaning of the reservation contained in the deeds, as contemplated by the parties thereto:

"That the defendants have the right to build new tenant houses, not one to every twenty or twenty-five acres of cleared or cultivated land, as testified by both witnesses for plaintiff and defendants, but one house with two rooms,

each fourteen feet square to every forty acres of cleared and cultivable land, for it is reasonable and right to assume that one such house would ordinarily be sufficient to shelter and accommodate a sufficient number of laborers to properly work forty acres of land. In other words, it is not ordinarily the case nor should it be so assumed that each tenant house would be occupied by one laborer only; generally they are occupied by a family, and in the family there are ordinarily enough members to do the work for forty acres, and in connection with each tenant house they would have the right to build such outhouses, as are reasonably necessary for housing the crop or crops raised, stables for the stock used in cultivating the land. Also the right to use timber for repairing the bridges on said land, building and repairing the fences on said lands. It is an ordinary occurrence for one to build new tenant houses on his land, and as a matter of fact as well as law, it could not be reasonably said to be an extraordinary plantation purpose, to do so. If, then, this be not an extraordinary plantation purpose, it would certainly come within ordinary plantation purposes. And so long as defendants keep within the bounds of ordinary plantation purposes in the use of the timber they do not violate the contract. Of course, the timber from 'Gippy' tract must be used in connection with that tract, and that from 'Wantoot' tract must be used in connection therewith.

"It is argued that the contract must be construed with reference to conditions of the land at time of the purchase of the timber. In this I concur.

"I have found the facts to be, and I may add undisputed, that on one place there were at the time six hundred acres and more, cleared and cultivated land, and on the other about nine hundred acres. My finding of facts show houses on each place, and condition, etc., all of which I have taken into consideration in giving what I regard a fair, reason-

able, just and legal construction of the contract involved here.

"In conclusion, I may add, I cannot conceive of how the parties, either or both, to the contract embraced in the reservation in the deeds, had in contemplation at the time of making the contract that the one was depriving herself of the right to build new tenant houses on her land, from the timber thereon, and the other was purchasing the right to prevent her from so doing, or how either party could conclude the building of new tenant houses was an extraordinary plantation purpose, instead of an ordinary plantation purpose.

"It is, therefore, ordered, that the restraining order or injunction heretofore granted by Judge Memminger be, and the same is hereby, dissolved and the complaint dismissed."

Plaintiff appeals.

*Messrs. Smythe, Frost & Visanska, Octavus Cohen* and *L. D. Lide,* for appellant. *Mr. Lide* cites: *Reservations in deeds should be construed strictly against grantor:* 11 Rich. 621; 1 Strob. 148; 2 Strob. 158; 4 Strob. 212. *Deeds should be construed in the light of existing conditions:* 79 S. C. 169; 80 S. C. 106; 75 S. C. 437; 58 Pac. 253. *Limitation of right to estover or botes:* 3 Strob. 11; 2 Black's Com. 35; Robinson's Elm. L. 64; 2 McC. Chan. 139; 68 S. C. 279; 2 DeS. Eq. 65; 24 Cyc. 1066; 18 Ency. 448; 64 Am. Dec. 362; 34 Am. St. R. 240; 2 Hill Ch. 277; 69 S. C. 364; 18 Cyc. 861; 25 Am. Dec. 582.

*Mr. Octavus Cohen* cites: *Meaning of plantation:* 3 Strob: 11.

*Messrs. W. A. Holman* and *E. J. Dennis,* contra.

October 30, 1912. The opinion of the Court was delivered by

MR. JUSTICE WATTS.   For the satisfactory reasons set forth by his Honor, Judge DeVore, in his Circuit Court decree, it is the judgment of this Court that the judgment of the Circuit Court be affirmed.

MR. JUSTICE FRASER, *dissenting.*   I cannot concur in the opinion of the majority of the Court in this case.

It seems to me that the building of many new tenant houses on a plantation at one time is in the nature of things an extraordinary use, and not included in the reservation.